(No. 70325.—

DOROTHY J. COLLINS, Appellant, v. CHARLES REYNARD *et al.*, Appellees.

*Opinion filed December 4, 1992.—Rehearing denied February 1, 1993.*

MILLER, C.J., joined by BILANDIC, FREEMAN and CUNNINGHAM, JJ., specially concurring.

Duane D. Young and Steven C. Ward, of Heckenkamp, Simhauser & LaBarre, P.C., of Springfield, for appellant.

Heyl, Royster, Voelker & Allen (Karen L. Kendall, of Peoria, and Roy O. Gully, of Springfield, of counsel), for appellees.

John J. Lowrey, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE HEIPLE delivered the opinion of the court:

This is a case of professional malpractice brought by a client against her lawyer. The gist of the complaint is that the lawyer, in drafting certain sales documents for the client, failed to protect the client's security interest in the property being sold, thus causing a financial loss to the client.

The complaint against the lawyer, in separate counts, couched its claims in separate theories of both contract and tort. At the trial level, the lawyer defendant moved to dismiss the tort portion of the complaint for failure to state a cause of action. The motion was denied. The lawyer defendant then took an interlocutory appeal. A unanimous appellate court reversed the trial court and stated, in essence, that the plaintiff's complaint for lawyer malpractice is cognizable in contract but not in tort. 195 Ill. App. 3d 1067.

On further appeal to this court, we issued a decision affirming the appellate court. Thereafter the plaintiff's petition for rehearing was allowed (134 Ill. 2d R. 367), and the case was reargued.

Today we rule that a complaint against a lawyer for professional malpractice may be couched in either contract or tort and that recovery may be sought in the alternative. In so ruling, we adhere to that long line of Illinois cases allowing pleading and recovery in tort for lawyer malpractice. (See generally *Barth v. Reagan* (1990), 139 Ill. 2d 399; *McLane v. Russell* (1989), 131 Ill. 2d 509; *Sexton v. Smith* (1986), 112 Ill. 2d 187; *Yates v. Muir* (1986), 112 Ill. 2d 205; *Ogle v. Fuiten* (1984), 102 Ill. 2d 356; *York v. Stiefel* (1983), 99 Ill. 2d 312; *Pelham v. Griesheimer* (1982), 92 Ill. 2d 13.) Our ruling is grounded on historical precedent rather than logic. If something has been handled in a certain way for a long period of time and if people are familiar with the practice and accustomed to its use, it is reasonable to continue with that practice until and unless good cause is shown to change the rule. Certainty in the law enables parties to understand their relative rights and duties and facilitates rationality and planning in matters of commerce and social intercourse. Uncertainty, on the other hand, introduces disfunction and chaos.

The appellate court, in attempting to extend the rationale of the *Moorman* doctrine to the case at hand, ruled contrary to the ruling we announce today. (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69.) While we do not fault its logic, we do not follow its ruling. Rather, we adhere to long established practice and custom. Logic may be a face card but custom is a trump.

*Moorman* attempted to distinguish between recovery in tort and recovery in contract by looking to the nature of the damage suffered rather than to the relationship between the parties or to the act which caused the damage. In reaching its conclusion, the *Moorman* analysis began at the end of the transaction and reasoned in reverse. It defined a special category of damages as not

cognizable in tort. A different analysis might have started at the beginning with a first consideration given to the relationship between the parties under a traditional contract or tort analysis. Though the ultimate decision in that case might yet have been the same, it would have been reached by a different route.

Contract law applies to voluntary obligations freely entered into between parties. Damages recoverable under a breach of contract theory are based upon the mutual expectations of the parties. The basic principle for the measurement of contract damages is that the injured party is entitled to recover an amount that will put him in as good a position as he would have been in had the contract been performed as agreed.

Tort law, on the other hand, applies in situations where society recognizes a duty to exist wholly apart from any contractual undertaking. Tort obligations are general obligations that impose liability when a person negligently, carelessly or purposely causes injury to others. These obligations have been recognized by society to protect fellow citizens from unreasonable risks of harm. Whether a duty will be recognized under tort law depends upon the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 525; *Lance v. Senior* (1967), 36 Ill. 2d 516, 518.

Although the common law distinctions between contract and tort have been both modified and confused by different courts in different situations, differences between tort theories and contract theories still have validity. (Feinman, *The Jurisprudence of Classification*, 41 Stan. L. Rev. 661 (1989); Bertschy, *Negligent Performance of Service Contracts and the Economic Loss Doctrine*, 17 J. Mar. L. Rev. 249 (1984); W. Keeton, Prosser

& Keeton on Torts §92, at 655 (5th ed. 1984).) For all of that, a punch in the nose remains, for all practical purposes, a tort and not a breach of contract. In the field of contract, however, some breaches have crossed the line and become cognizable in tort. See generally *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 420; *Nevin v. Pullman Palace Car Co.* (1883), 106 Ill. 222; *Sabath v. Mansfield* (1978), 60 Ill. App. 3d 1008, 1014; *Ledingham v. Blue Cross Plan for Hospital Care of Hospital Service Corp.* (1975), 29 Ill. App. 3d 339, 344, *rev'd on other grounds* (1976), 64 Ill. 2d 338.

Finally, it is to be noted that the ruling we announce today is limited to the specific field of lawyer malpractice as an exception to the so-called *Moorman* doctrine and to the distinctions separating contract from tort. Today's decision neither changes the duties a lawyer owes his client, nor does it change the circumstances under which a lawyer may be sued for malpractice, nor does it change the damages recoverable. We merely restate the long-standing Illinois practice in this matter.

Accordingly the judgment of the appellate court is reversed and the judgment of the circuit court is affirmed. The cause is remanded to the circuit court for further proceedings.

*Appellate court reversed;*
*circuit court affirmed;*
*cause remanded.*

CHIEF JUSTICE MILLER, specially concurring:

I concur in the court's judgment. Unlike the majority, however, I believe that today's result is dictated not only by custom but by logic as well. The development of the *Moorman* doctrine and the nature of the attorney-client relationship make clear that the doctrine can have no application here.

In *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, this court adopted the principle, articulated in *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 403 P.2d 145, 45 Cal. Rptr. 17, that actions against product manufacturers for what are in essence "economic losses" are more properly brought in contract than in tort. *Moorman* described the term "economic loss" in the following manner:

> " 'Economic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ***' [citation] as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' [Citation.] These definitions are consistent with the policy of warranty law to protect expectations of suitability and quality." (*Moorman*, 91 Ill. 2d at 82.)

In *Moorman*, the court determined that damages for solely economic losses may not be recovered under the tort theories of strict liability, negligence, or innocent misrepresentation in an action relating to product performance or quality against a product manufacturer.

Application of the *Moorman* doctrine has not been confined to strict liability actions against product manufacturers. In subsequent decisions, this court has extended the rationale of the economic loss doctrine to other types of cases. These include actions relating to construction defects brought against architects (*2314 Lincoln Park West Condominium Association v. Mann, Gin, Ebel & Frazier, Ltd.* (1990), 136 Ill. 2d 302) and builders and developers (*Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87; *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150; *Redarowicz v. Ohlendorf* (1982), 92

Ill. 2d 171), as well as actions relating to the rendition of certain industrial services (*Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146). In each instance, however, this court has noted the commercial or contractual nature of the parties' relationship and the appropriateness of limiting the plaintiff to a contract-based remedy. See *2314 Lincoln Park West Condominium Association*, 136 Ill. 2d at 317 ("The architect's responsibility originated in its contract with the original owner, and in these circumstances its duties should be measured accordingly"); *Anderson Electric*, 115 Ill. 2d at 153 ("A plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort"); *Morrow*, 112 Ill. 2d at 98 ("the plaintiffs essentially are complaining that they did not receive the benefit of their bargain—a harm which is appropriately remedied by bringing an action for breach of contract"); *Foxcroft Townhome Owners Association*, 96 Ill. 2d at 156 ("There is no allegation that the installation of defective siding resulted in physical injury, or damage to other property. Nor was the damage to the defective product itself due to a 'sudden and dangerous' occurrence best served by the policy of tort law' "); *Redarowicz*, 92 Ill. 2d at 178 ("While the commercial expectations of this buyer have not been met by the builder, the only danger to the plaintiff is that he would be forced to incur additional expenses for living conditions that were less than what was bargained for").

Thus, throughout the development of the *Moorman* doctrine, this court has eschewed a formalistic reliance on the character of the damages sought and has focused instead on the policies served by the rule. In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations. (See *Seely v. White Motor Co.* (1965), 63 Cal. 2d 9, 18, 403

P.2d 145, 151, 45 Cal. Rptr. 17, 23; see also *Miller v. United States Steel Corp.* (7th Cir. 1990), 902 F.2d 573, 574 (suggesting that the term "commercial loss" rather than "economic loss" more accurately reflects the conceptual foundations of the principle).) The doctrine reflects the principle that there are varying degrees of quality, all commercially acceptable, that parties to a commercial transaction are free to bargain over if they choose. For example, an architect's selection of the construction materials to be used in a particular structure will depend in large part on the amount of money the owner is willing to spend on the project. Disputes later arising from the character of the materials used should be determined under principles of contract law, and should be controlled by the requirements imposed by the parties' own undertaking. In that instance, the contract itself serves best to define the parties' respective rights and obligations.

There is no small measure of difficulty in transplanting the *Moorman* doctrine to the field of attorney malpractice. Tort law has traditionally provided the primary means for resolving claims of attorney malpractice. (C. Wolfram, Modern Legal Ethics §5.6.2, at 209 (1986) ("[T]he tort theory is by far the most important theory of recovery"); 1 R. Mallen & J. Smith, Legal Malpractice §8.10, at 425 (3d ed. 1989) ("The most common form of a legal malpractice action is for negligence"); Manning, *Legal Malpractice: Is It Tort or Contract?*, 21 Loy. U. Chi. L.J. 741, 751 (1990) (in Illinois, tort law affords traditional remedy for legal malpractice, though breach of contract has also been used).) Tort law provides a flexible standard by which to assess attorney performance. The requirement of competence is a duty traditionally imposed in the attorney-client relationship, and it is codified in our Rules of Professional Conduct (134 Ill. 2d R. 1.1). This requirement is founded on, and reflects, tort

law principles (see 1 G. Hazard & W. Hodes, The Law of Lawyering §1.1:201 (2d ed. 1990)) and exists without regard to the terms of any contract of employment entered into by a lawyer and a client.

For these reasons, it is singularly inappropriate to attempt to apply the economic loss, or better, commercial loss, doctrine to attorney malpractice actions. The cases in which *Moorman* has been applied are grounded on the notion that the complaining party, if he wished protection against the particular type of harm suffered, could have bargained for a guarantee or warranty against it. It is difficult to apply that concept in the area of legal representation, where the purpose of retaining counsel is to obtain a representative who will function as a fiduciary and will act professionally, with reasonable skill and ability, to advance the client's interests. It would be rare indeed for an attorney to guarantee or to promise to achieve a particular result in a matter. 1 R. Mallen & J. Smith, Legal Malpractice §8.4, at 415 (3d ed. 1989).

In light of the purposes the *Moorman* rule was designed to serve, there is simply no reason—in logic or in custom—to extend that doctrine to the field of lawyer malpractice. The attorney-client relationship is not the sort of commercial context in which limits on the recovery of economic losses are either necessary or properly applied.

For the reasons stated, I concur in the court's judgment.

JUSTICES BILANDIC, FREEMAN and CUNNINGHAM join in this concurrence.