LOU IRENE BROOKS, Plaintiff-Appellant, v. EDWARD F. BRENNAN, JR., Defendant-Appellee.

Fifth District   No. 5—92—0192

Opinion filed January 3, 1994.

Robert L. Carter, of Reinert, Duree & Crane, P.C., of St. Louis, Missouri, for appellant.

Hinshaw & Culbertson, of Chicago (John D. Bauman, Stephen R. Swofford, and Nancy G. Lischer, of counsel), for appellee.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

Plaintiff, Lou Irene Brooks, appeals from the trial court's entry of summary judgment in favor of defendant, attorney Edward F. Brennan, Jr., on counts I, II, and III of plaintiff's fourth amended complaint alleging legal malpractice against defendant, who had been plaintiff's attorney in a Federal Employers' Liability Act (FELA) case. Plaintiff's fourth amended complaint included a fourth count, but that count was dismissed by the trial court, and plaintiff does not appeal that dismissal. Although the parties frame the issues differently, we believe that the central issue of this appeal is whether all of

the pleadings, depositions, admissions, and affidavits of record show that there is no genuine issue of material fact, so that defendant was entitled to judgment as a matter of law. (*Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201.) For reasons we will more fully explain, we affirm the trial court's entry of summary judgment in favor of defendant.

Before reviewing the facts of this case, we must briefly set forth the law as it pertains to review of summary judgments. It is clearly established that summary judgment should be entered only in those cases in which there is no genuine issue of material fact and where the court can enter judgment as a matter of law. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 586 N.E.2d 1211.) When a defendant files a motion for summary judgment, as in this case, the plaintiff must then come forward with evidence to support each and every element of its causes of action in order to avoid summary judgment. (*Webber v. Armstrong World Industries, Inc.* (1992), 235 Ill. App. 3d 790, 601 N.E.2d 286.) As the court of review, we are required to determine whether the trial court correctly entered summary judgment by reviewing the facts of this case in the light most favorable to plaintiff, the party opposing the motion for summary judgment. *Lindenmier v. City of Rockford* (1987), 156 Ill. App. 3d 76, 508 N.E.2d 1201.

Plaintiff filed her complaint against defendant in July 1986, alleging that she had been damaged by defendant's negligent handling of her FELA case against Missouri-Pacific Railroad Company (the Railroad). Throughout the lower court proceedings, plaintiff has alleged that defendant was negligent in two basic ways. First, plaintiff alleges that she was damaged because defendant failed to file a FELA claim on her behalf until after the statute of limitations had run out for an incident occurring on June 25, 1973. Second, plaintiff claims that she was damaged by defendant's failure to inform her, prior to a settlement conference in which she settled the case involving an accident on June 27, 1973, that a condition of the settlement was that she must resign her employment with the Railroad.

The evidence of record below, taken in the light most favorable to plaintiff, is as follows: Defendant filed the complaint against the Railroad on December 9, 1974, alleging only the June 27 incident and not the June 25 incident. The complaint was signed only by defendant. Plaintiff claimed that she was not given a copy of the complaint and did not know until the day of trial, in 1980, that the complaint did not allege the June 25 incident.

After her accidents in 1973, plaintiff worked a little between 1973 and 1976 but left permanently in 1976, because she felt that she "just couldn't cope." Plaintiff did not work at any type of employment after 1976. In 1977 or 1978, plaintiff filed her claim for disability benefits with the railroad retirement board.

The trial of the case against the Railroad was scheduled for April 7, 1980. On that date, another attorney from defendant's law firm, John P. Kujawski, was handling the case. (We note that defendant does not argue on appeal that Kujawski was not acting as an agent of defendant or their mutual law firm. Therefore, we will at times in this opinion refer to defendant, when such references actually refer to the actions of Kujawski.) On April 7, 1980, Kujawski filed a motion to amend the complaint, proposing to add a second count to allege the June 25, 1973, incident. The trial court denied the motion to amend due to the statute of limitations of three years for filing a FELA claim expiring. Thus, plaintiff had only until June 1976 to file her claim for the June 25, 1973, accident.

Before the case came to trial, Kujawski entered into settlement negotiations with John Gunn, the attorney for the Railroad. Gunn had previously offered plaintiff $15,000 to settle the case, but plaintiff had refused this offer. After negotiations with Gunn and conferences with plaintiff, Kujawski informed plaintiff of the Railroad's offer of $37,500. Plaintiff claims she refused this offer, feeling that she should get "at least $100,000 if not more," because she felt at that time that she would never be able to go back to work. Kujawski told her he would not take the case to a jury trial because the evidence was too weak, and that plaintiff would have to hire another attorney if she wanted a trial. Plaintiff claims that Kujawski told her that as long as they were at the courthouse, they ought to "go in and talk to him." Plaintiff thought she was going in to talk to Gunn, but she ended up in the courtroom instead, where the parties put the settlement on the record.

At the settlement conference, plaintiff stated that she understood that she was settling the case for $37,500 and that the Railroad was agreeing to contribute to her pension fund so that plaintiff would qualify for a railroad disability pension. Plaintiff stated that she understood that the final decision about whether she could receive a disability pension was up to the railroad retirement board. Nothing was said directly about plaintiff having to resign her employment as a condition of the settlement. Plaintiff stated that she agreed to settle the case under these conditions.

After the hearing, plaintiff claims that Kujawski told her, for the first time, that the Railroad might want her to give up her job. About two weeks after the hearing, plaintiff went to defendant's office. She was given a copy of the release, which she would have to sign before the Railroad would issue the settlement check. She refused to sign the release, because it contained a clause requiring her to give up all of her employment rights with the Railroad as consideration for the settlement.

In the months following the settlement conference, plaintiff conferred with several attorneys. During this period, according to plaintiff, Kujawski "insisted" that plaintiff sign the release and settle the case. Kujawski finally wrote a letter to Gunn stating that Gunn should consider filing a motion to compel plaintiff to sign the release and settle the case. At some point in time, plaintiff fired defendant's law firm and retained attorney Michael Katz to represent her. On October 14, 1981, Katz filed a motion to enforce the $37,500 settlement with the Railroad, alleging that the parties had not agreed that plaintiff had to resign from her employment as a condition of the settlement, but that the Railroad had refused to pay plaintiff unless she gave up her employment rights. The trial court denied plaintiff's motion to enforce the settlement. Plaintiff did not appeal this decision.

On January 21, 1982, Gunn sent a letter to Katz indicating that the Railroad had agreed to settle the case for plaintiff's settlement demand of $38,500 ($1,000 more than offered on April 7, 1980, during defendant's representation of plaintiff). That letter also stated, in pertinent part:

"Needless to say, as part of that settlement agreement, you advised that she would be willing to sign a Release which contained a resignation as to any and all of her seniority rights, and rights under any labor contracts with the railroad."

On March 17, 1982, plaintiff signed a general release, identical to the one she refused to sign during defendant's representation, except that the Railroad agreed to pay $38,500 instead of $37,500. The release contained the same language regarding plaintiff's agreement to give up all employment rights with the Railroad. Also, on March 17, 1982, Gunn signed the following statement:

"It is understood by the undersigned that in executing the Release regarding her claim arising in June 1973, Mrs. Brooks has agreed to the resignation contained therein, because her lawyer, John Kujawski, told her that this was a part of the settlement. Mrs. Brooks has always maintained that she was not advised by her attorney, John Kujawski, that the resignation was

included in the settlement prior to the Court proceedings on April 7, 1980."

Sometime after plaintiff settled the case with the Railroad, she evidently filed a malpractice complaint against defendant that she voluntarily dismissed sometime thereafter. As a part of this case, defendant took plaintiff's discovery deposition on December 14, 1982. Plaintiff testified that her principal income was from her railroad retirement disability pension. The record is not clear as to the exact date she initially received the disability pension, but it is clear that plaintiff began receiving the pension sometime before the December 1982 deposition. In the same deposition, plaintiff testified that when she signed the release in 1982, she knew that she had to resign from her work with the Railroad as a condition of the settlement, but that she signed the release only because she did not have any other choice. She felt like she was "probably just as well off."

The evidence from the discovery conducted during the case filed in 1986 discloses that defendant did not believe that he could prove that the Railroad was liable for the June 25 accident. Plaintiff's version of how that accident occurred was that she was descending a stairway at work when her left foot "slipped on something." She did not know if anything was on the stairway or what caused her fall because she did not look at the stairs before or after the accident. There were no other witnesses to this incident, but plaintiff filled out an accident report with her employer and went to a doctor within a couple of days. She continued to work after the accident with the exception of going to the doctor. Her left ankle and knee were sore, but the doctor told her there were no injuries from the accident.

On June 27, 1973, as plaintiff came up the same stairway, a coworker came out of a door at the top of the stairway, just as plaintiff was trying to enter the same door. The door opened, catching plaintiff's right foot underneath. Plaintiff testified that the door twisted her foot and pushed her back into the wall. Plaintiff primarily injured her right foot and knee in the second incident.

Katz, the attorney who represented plaintiff through her settlement in 1982, testified in his discovery deposition that he felt plaintiff was "bound by the [1980] agreement that she had freely entered into [with the Railroad]." Katz stated that the Railroad's liability for plaintiff's first accident was questionable, and he agreed "with the method in which her rights were pursued." During the time Katz represented plaintiff, he told her that she ought to pursue a legal malpractice action against defendant if she wanted, but he did not recommend

any particular attorney to represent her in that capacity and he did not file any such action himself.

Katz filed an affidavit in opposition to a motion to dismiss filed by defendant. Katz' affidavit stated that plaintiff's chief dissatisfaction with the 1980 settlement came from the fact that it required her to resign her job.

In discovery, plaintiff's expert witness, attorney William C. Evers III, testified that, in his opinion, defendant violated the "standard of care" by not advising plaintiff of all of the terms of the settlement, by not filing claims for both incidents, and generally for taking positions adverse to plaintiff. He admitted, however, that in a malpractice case such as this, the plaintiff must be able to prove that she would have been successful in the underlying case in order to prove the malpractice case. Evers was not aware that plaintiff was receiving railroad disability benefits and was not sure what effect that would have on plaintiff's claims.

Gunn testified in a deposition that the Railroad paid more money to plaintiff than usual in order to get her to resign and that the Railroad requires the plaintiffs/employees to resign 100% of the time in cases such as this, where the plaintiff is not working at the time of the settlement and appears to be "totalled out." Gunn stated that the Railroad paid the additional $1,000 to plaintiff to settle the case in 1982 "to end the matter."

The court entered its order granting defendant's motion for summary judgment as to all remaining counts of plaintiff's fourth amended complaint. The trial court found that plaintiff received additional consideration of $1,000 after negotiations by Katz, her new attorney, above and beyond the original consideration of $37,500; that plaintiff executed a full and complete release on March 17, 1982, which included that plaintiff must resign from her job as consideration for the $38,500 settlement; and that there was no genuine issue of material fact concerning the intent of the parties or the surrounding circumstances regarding the execution of that release. The court also found that the release applied to defendant "to the application of the Doctrines of Waiver and Estoppel."

The court finally found that *Collins v. Reynard* (1990), 195 Ill. App. 3d 1067, *appeal allowed* (1990), 135 Ill. 2d 554, 575 N.E.2d 909, applied to the case to bar plaintiff's third count, as it sounded in tort and sought only economic damages. However, the parties have agreed that any issue regarding the 1990 *Collins* case is now moot, since the supreme court granted a petition for rehearing and reversed its 1990 decision in *Collins v. Reynard* (1992), 154 Ill. 2d 48, 607 N.E.2d 1185.

It is now clearly established that a complaint against an attorney for professional malpractice may sound in either tort or contract or both, regardless of the type of damages sought. *Collins v. Reynard* (1992), 154 Ill. 2d 48, 607 N.E.2d 1185.

■ Legal malpractice cases are much the same as other negligence actions.

> "The plaintiff-client must prove an attorney-client relationship existed; the duty owed to the plaintiff-client was breached; the attorney's negligence was the proximate cause of injury; and actual damages. [Citations.] In order to succeed in a cause of action for legal malpractice, a plaintiff must prove that *but for* the negligence charged, he would have been successful in the prosecution or defense of a cause of action involving a third party." (*Nika v. Danz* (1990), 199 Ill. App. 3d 296, 308, 556 N.E.2d 873, 882.)

The type of procedure required to prove the underlying action is often referred to as a "trial-within-a-trial." *Nika*, 199 Ill. App. 3d at 308, 556 N.E.2d at 882.

We note that nowhere in plaintiff's brief does she argue that there is any evidence, and defendant argues there is no evidence, to support her claims that *but for* defendant's actions, she would have prevailed upon her claim resulting out of the June 25 accident, nor does she argue that she would have received any greater settlement or damages had she been informed in advance of the April 7, 1980, settlement conference that she would be required to resign as a part of the settlement. The trial court did not enter its order on that ground, but that does not preclude this court from affirming the entry of summary judgment on that ground. Indeed, a court of review is free to affirm the lower court on any grounds called for in the record, regardless of the reasoning or grounds relied upon by the lower court. *Beckman v. Freeman United Coal Mining Co.* (1988), 123 Ill. 2d 281, 527 N.E.2d 303; *B.T. Explorations, Inc. v. Stanley* (1989), 187 Ill. App. 3d 23, 542 N.E.2d 1292.

■ Plaintiff's own testimony established that she did not know why she fell on June 25, 1973. As defendant aptly points out, "[c]ases are legion that where a person slips, but does not know the cause, he cannot establish the essential element of proximate cause, and summary judgment is proper." (*Vance v. Lucky Stores, Inc.* (1985), 134 Ill. App. 3d 166, 480 N.E.2d 167; *Kimbrough v. Jewel Cos.* (1981), 92 Ill. App. 3d 813, 416 N.E.2d 328.) In FELA cases, the plaintiff must show that the employer was in some way negligent and that the employer's negligence was the proximate cause of the plaintiff's injuries,

or else the trial court must direct a verdict in favor of the employer. (*Escher v. Norfolk & Western Ry. Co.* (1980), 82 Ill. 2d 110, 411 N.E.2d 864.) Here, plaintiff did not present any evidence that she was injured by the negligence of the Railroad on June 25, 1973. Therefore, the court's entry of summary judgment as to count I of her fourth amended complaint, alleging defendant's malpractice for not having filed a claim for plaintiff's accident occurring on June 25, 1973, is affirmed.

■ As to plaintiff's other counts, alleging various breaches of duty by defendant in his representation of plaintiff as to the June 27 incident, we likewise find that not a shred of evidence exists to support a claim that *but for* defendant's actions, even if they did amount to a breach of his professional duty to plaintiff, plaintiff had any possibility of settling the case for a greater amount or receiving greater damages from a judge or jury. To the contrary, the evidence shows that plaintiff received a larger settlement than usual for her type of injury due to her agreement that she resign.

Plaintiff strenuously argues that there is a question of fact as to her intent in signing the release in 1982. Plaintiff claims that she was forced to sign the release because Kujawski did not tell her that she would have to resign. She further claims that Kujawski advised Gunn that he should take legal action to try to enforce the settlement, and that this and other similar actions by Kujawski so eroded her bargaining position with the Railroad that she effectively had no other choice but to settle the case for the additional $1,000. However, such an argument cannot stand where plaintiff did not seek to take the case before a jury and where she renegotiated a new and increased settlement while represented by a different attorney.

Plaintiff's argument also begs the real issue, whether there is any genuine issue of material fact as to whether defendant's acts proximately caused any injury to plaintiff. Plaintiff would have us reverse the trial court primarily on the basis that she was not advised that she would have to resign her job, even though at the time of the 1980 settlement conference she had not been able to work for four years and had already applied for disability benefits. In her application for disability benefits, plaintiff alleged that she was unable to work. Plaintiff was awarded disability benefits and formally adjudicated unable to work sometime before December 1982. In our opinion, these facts do not amount to a waiver or estoppel of plaintiff's malpractice claim as a matter of law, but they do mandate a finding that the evidence does not support a claim that *but for* defendant's actions, plaintiff would have been able to return to work and receive more money

than she did under her disability pension and the settlement. Therefore, we affirm the trial court's entry of summary judgment for defendant on counts two and three, as well as count one.

Finally, we note that plaintiff was granted leave to cite the recent case of *McCarthy v. Pedersen & Houpt* (1993), 250 Ill. App. 3d 166, as additional authority in support of its argument on appeal. Although plaintiff does not argue exactly how *McCarthy* should apply to this case, we feel that it is close enough factually that it must be considered.

In *McCarthy*, the court was called upon to decide an issue of first impression in Illinois: whether the settlement of a lawsuit by a plaintiff precludes a later complaint against the trial counsel for malpractice. In *McCarthy*, the defendant attorney represented plaintiff in commercial litigation. At the close of the trial, but before the jury returned its verdict, the plaintiff agreed to settle the case. The plaintiff then consulted with an attorney different from her trial counsel. Although the second attorney's scope of representation is not clear from the facts of the case, he reviewed the settlement offer and participated in plaintiff's execution of the settlement and release. Plaintiff later filed her malpractice action against the trial attorney alleging malpractice for failing to file a timely claim under the Commodities Exchange Act and negligently selecting an unqualified expert to testify at the trial. The defendant attorney filed a motion for summary judgment, alleging that plaintiff's voluntary decision to settle the underlying case at a time when she was represented by independent counsel precluded a malpractice action against her trial attorney. The trial court denied the motion for summary judgment but found that it could not determine as a matter of law whether plaintiff's suit was barred. The trial court then certified the question to the appellate court. *McCarthy*, 250 Ill. App. 3d at 166-67.

The First District Appellate Court conducted an extensive review of case law from other jurisdictions before ruling that summary judgment would be improper under the facts of the case presented to it, where the underlying suit was settled and independent counsel had reviewed the settlement agreement before plaintiff signed it. The court found that the evidence presented a dispute as to whether defendant was negligent in handling the underlying suit and whether the plaintiff was damaged by that negligence. The court also found that the extent of the independent counsel's involvement in the settlement was disputed. These factual disputes amounted to genuine issues of material fact precluding summary judgment. *McCarthy*, 250 Ill. App. 3d at 172.

We agree with the reasoning of our colleagues in the first district but feel that the case is factually distinguishable from the case at bar. In *McCarthy*, facts were disputed about the defendant's negligence, the plaintiff's damages, and the second attorney's involvement in the settlement. In our case, only the defendant's negligence is disputed, but the facts supporting plaintiff's argument on this issue are very thin. What is not disputed, due to the lack of evidence, is the failure to show any injury to the plaintiff. Even if we assume that the defendant was negligent in failing to file for the injury of June 25, 1973, and in failing to advise plaintiff that she would have to resign, there are no facts or expert opinion to support a conclusion that plaintiff was injured at all by any of defendant's acts. Further, there is no dispute that plaintiff had already fired defendant when she hired Katz and that Katz represented plaintiff in renegotiating a settlement somewhat larger than that offered during defendant's representation of plaintiff.

Having found that genuine issues of material fact were disputed, the court in *McCarthy* stated:

> "Certainly plaintiff should be permitted to develop these facts at trial. Although there is no Illinois case law on this issue, we are persuaded by those cases from outside this jurisdiction holding that only a trial on the merits can fully and fairly resolve the issue of whether an attorney is liable for malpractice despite the fact that the underlying case was settled." *McCarthy*, 250 Ill. App. 3d at 172.

■ We agree that a plaintiff who has settled her case should not be automatically barred from filing a malpractice case against her trial attorney, even if she settled the case. As the *McCarthy* court reasoned, to disallow malpractice cases altogether after settlement could create ethical problems by tempting attorneys who mishandle cases to encourage their clients to settle, regardless of the client's best interest, for the sole purpose of avoiding a malpractice action. (*McCarthy*, 250 Ill. App. 3d at 172.) We can add to the reasoning of *McCarthy* that the attorney malpractice action should be allowed where it can be shown that the plaintiff had to settle for a lesser amount than she could reasonably expect without the malpractice. In that instance, a plaintiff should not be barred from pursuing a malpractice action because she had to settle in order to salvage some of her claim.

In malpractice cases, just as in other cases, plaintiffs must present evidence showing genuine issues of material fact on every element of their claim in order to avoid a defendant's motion for sum-

mary judgment. (*Webber v. Armstrong World Industries, Inc.* (1992), 235 Ill. App. 3d 790, 601 N.E.2d 286.) In the case *sub judice,* plaintiff failed to present any evidence to support a necessary element of all of her claims, specifically, that she was injured in any way by defendant's alleged negligence or that she settled for a lesser amount of damages than she could have reasonably expected to have recovered without the alleged malpractice.

For the reasons stated, we affirm the trial court's entry of summary judgment in favor of defendant.

Affirmed.

RARICK and GOLDENHERSH, JJ., concur.