**BANCO DEL ESTADO, Plaintiff,**

v.

**NAVISTAR INTERNATIONAL TRANS-PORTATION CORP. and Navistar International Export Corp., Defendants.**

**No. 95C–5889.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 25, 1996.

William Denby Heinz, Jenner & Block, Chicago, IL, Roger A. Clark, T. Douglas Hollowell, Rogers & Wells, Washington, DC, for Banco del Estado.

Richard M. Franklin, Martin R. Castro, William Lynch Schaller, Ellenore Angelidis, Baker & McKenzie, Chicago, IL, for Navistar International Transportation Corp.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Defendants, Navistar International Transportation Corporation and Navistar International Export Corporation (collectively "Navistar"), have moved this court to dismiss the Complaint of the plaintiff, Banco del Estado (the "Bank") pursuant to Federal Rule of Civil Procedure 12(b)(6).

Under Federal Rule of Civil Procedure 12(b)(6), this court must presume that all of the facts alleged in the Complaint are true, and must examine them in the light most favorable to the plaintiff. *Ellsworth v. City of Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). A Rule 12(b)(6) motion to dismiss is granted if the plaintiff is unable to prove any set of facts that would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). For the reasons explained below, this court grants the motion to dismiss in part and denies the motion to dismiss in part.

## I. Background

The Complaint alleges that in 1993 the Bank issued two letters of credit to finance Sidauto S.A.'s ("Sidauto") purchase of eighty buses to be imported into Colombia for use in public transportation. The letters of credit were issued in favor of the seller of the eighty buses, Navistar, for the total amount of $1,722,000. In order to collect the amount pledged in its favor in the letters of credit, Navistar presented documents (the "Presentment Documents") to the Bank which stated that Navistar had shipped "new 1993 buses" for import into Colombia. The Presentment Documents also contained vehicle identification numbers ("VIN numbers") which identified the buses as 1990 model year buses. However, the Bank did not know the meaning of the VIN numbers at the time that Navistar presented the documents. Prior to the arrival of the buses in Colombia, the Bank paid Navistar the purchase price of the buses based on the Presentment Documents.

Colombian law prohibits the importation of vehicles that are not newly manufactured. The Colombian customs authority, *Impuestos y Aduanas Nacionales,* seized the 1990 model year buses upon their arrival in Colombia.

Based on these facts, the Complaint asserts seven causes of action: (1) Breach of Warranty under Uniform Commercial Code Section 5–111; (2) Fraud; (3) Negligent Misrepresentation; (4) Breach of Sales Contract; (5) Breach of the Implied Warranty of Fitness for a Particular Purpose; (6) Breach of the Implied Covenant of Good Faith; and (7) Violation of the Illinois Consumer Fraud Act.

## II. Language Translation

Navistar claims that one error pervades the Complaint. Navistar states that the Bank's Complaint erroneously alleges that Navistar warranted or represented in the Presentment Documents that the buses were "new 1993 buses," "1993 model year buses," or "new 1993 model year buses." The "PRODUCT DESCRIPTION" section of the Presentment Documents provides as follows:

[Quantity omitted] unidades buses nuevos vendidos ano de 1993, carroceria nueva marca Wayne chasis International serie

3700 con motor diesel 7.31, anticontaminante.

The Bank translated this section as follows: [Quantity Omitted] units newly sold buses year of 1993, new body brand Wayne International chassis series 3700 with 7.3L anti-contaminant diesel motor.

According to Navistar, the Bank is bound to the English translation of the relevant portion of the Presentment Documents. We disagree.

■ Navistar correctly suggests that factual assertions in pleadings constitute judicial admissions, which bind the party who makes them. *Brunswick Leasing Corporation v. ITSI Management Services Corporation*, 1990 WL 103648 (N.D.Ill.1990); *American Title Insurance Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir.1988). Based on such judicial admissions, a party may plead itself out of court. Where, as in this case, a copy of a written instrument is attached to the complaint as an exhibit, the written instrument is a part of the complaint and its factual assertions constitute judicial admissions. *See* Fed.R.Civ.P. 10(c). When such an exhibit contradicts an assertion in the complaint and reveals information which prohibits recovery as a matter of law, the information provided in the exhibit trumps the assertion in the complaint. *Whirlpool Financial Corp. v. GN Holdings, Inc.*, 873 F.Supp. 111, 123 n. 18 (N.D.Ill.), *aff'd.*, 67 F.3d 605 (7th Cir.1995).

Here, however, the attachments to the Complaint include copies of both the original Spanish versions of the Presentment Documents and English translations of the Presentment Documents. The Bank admits that the English translations which are attached to the Complaint are somewhat flawed. The proper English translation of the relevant language in the Presentment Documents, attached to the Bank's response to this motion and undisputed by Navistar, reads "new 1993 buses sold." Because the original Spanish versions of the Presentment Documents were attached to the complaint, this court finds that the Bank did not make a "judicial admission" of the erroneous English translation. The copies of the original Presentment Documents, which are written in Spanish, control

what representations Navistar made to the Bank. As a result, this court further finds that the Navistar represented that it delivered "new 1993 buses."

### III. Count I—Breach of Presentment Warranty

■ Navistar moves to dismiss the breach of presentment warranty count arguing that Section 5–111 of the Uniform Commercial Code does not provide for a cause of action based on the falsity of statements in the presentment documents. Section 5–111 of the Uniform Commercial Code provides, in pertinent part, as follows:

(u)nless otherwise agreed the beneficiary by transferring or presenting a documentary draft or demand for payment warrants to all interested parties that the necessary conditions of the credit have been complied with.

810 ILCS 5/5–111(1) (1996). Few cases have interpreted the meaning of Section 5–111. *See* J. White & R. Summers, Uniform Commercial Code, Section 26–8, at 161 (4th ed. 1995). As the Bank points out, the cases that have interpreted Section 5–111 disagree as to whether Section 5–111 states that the beneficiary simply warrants to the issuer that the documents on their face comply with the terms of the letter of credit or that the beneficiary warrants the truth of the statements in the letter of credit. However, all of the cases cited by the Bank to support the inference that the beneficiary warrants the truth of the statements are from other jurisdictions. *See Sun Marine Terminals v. Artoc Bank and Trust, Ltd.*, 797 S.W.2d 7, 11 (Tex.1990); *Amwest Surety Ins. Co. v. Republic National Bank*, 977 F.2d 122, 128 (4th Cir.1992), *cert. denied*, 507 U.S. 985, 113 S.Ct. 1582, 123 L.Ed.2d 149 (1993).

■ In Illinois, Section 5–111 has been interpreted to provide a warranty that the documents comply on their face with the terms of the letter of credit, and that none of the exceptions set forth in section 5–114(2)(b) are present. *Janivo Holding, B.V. v. Continental Bank*, 859 F.Supp. 316, 321 (N.D.Ill. 1994), *quoting First Arlington Nat'l Bank v. Stathis*, 115 Ill.App.3d 403, 71 Ill.Dec. 145, 152, 450 N.E.2d 833, 840 (1983). Section 5–

111 does not provide for a cause of action based on noncompliance with the underlying contract governing the letter of credit. Nor does Section 5–111 authorize the issuer to assert defenses which its customer might have to the underlying contract. *Id.*

Here, the Presentment Documents facially complied with the terms of the credit even though the VIN numbers revealed that the buses were 1990 model year buses. The Bank was under no obligation, and indeed was prohibited from, going beyond the face of the documents to determine the meaning of the VIN numbers. The VIN numbers simply provided superfluous information and not a required term of the credit.

The Bank appropriately honored facially complying drafts and the Bank's recourse for nonpayment is to sue its customer for reimbursement. In issuing the letters of credit, the Bank assumed the risk that its customer might be unable to pay. The Bank also assumed that risk that the goods being sold, the buses, would not secure the letters of credit because they were nonconforming or otherwise devalued or destroyed. Thus, the Bank cannot state a cause of action under Section 5–111 and this court dismisses Count I of the Complaint.

### IV. Count II—Fraud

The elements of fraud are: (1) an intentional false statement of material fact; (2) the party to whom the statement was made had a right to rely on it; (3) the statement was made for the purpose of inducing reliance on it; and (4) reliance on the statement led to injury. *Mitchell v. Skubiak,* 248 Ill.App.3d 1000, 188 Ill.Dec. 443, 447, 618 N.E.2d 1013, 1017 (1993). All fraud claims must be plead with particularity. *See* Fed. R.Civ.P. 9(b).

Navistar argues that the Bank cannot state a cause of action for fraud because the Bank had no right to rely on the representations made in the Presentment Documents. Navistar also argues that the Bank has failed to state a claim for fraud because it has failed to plead fraud with particularity. Because we agree with the second argument we do not reach the first argument.

The Bank alleges that Navistar "further misrepresented to the Bank orally and in writing that the buses were, in fact, 1993 model year buses." This allegation is deficient in that it fails to allege the time, place, and content of the communications which constituted the fraud. *See Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir.1992). Even with respect to the Presentment Documents, the Bank fails to allege the time of the communications which constituted the fraud. The Bank, presumably recognizing that it had failed to plead with particularity, attempts to ameliorate the problem by attaching documents to its response brief. The cases cited by the Bank do not establish the ameliorating the pleadings in this manner when the allegation involves fraud and the requirements of particular pleading. As a result, Count II is dismissed and the Bank is granted leave to amend the Complaint.

### V. Count III—Negligent Misrepresentation

Navistar moves to dismiss the negligent misrepresentation claim because the Bank has suffered only an economic injury. In Illinois, a plaintiff cannot allege a claim for negligent misrepresentation based on a purely economic injury unless the defendant is in the "business of supplying information for the guidance of others in their business transactions." *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982).

The Bank alleges that it has suffered not only economic injuries but also the noneconomic injuries of "widespread criticism and reputational injury." The Bank argues that injury to reputation has been classified as a noneconomic injury in *Collins v. Reynard,* 1991 WL 220561, 1991 Ill. LEXIS 104, at *5 (Ill.1991). However, the Bank fails to recognize that the Illinois Supreme Court reheard *Collins* and vacated its original opinion. The final opinion did not address the issue of reputational injury. Rather, the Illinois Supreme Court found that plaintiffs should be allowed to recover in tort for lawyer malpractice based on "historical precedent rather than logic." *Collins v. Reynard,* 154 Ill.2d 48, 180 Ill.Dec. 672, 673, 607 N.E.2d 1185, 1186 (1993). Thus, *Collins* offers this court

no guidance on the issue of reputational injury.

The *Moorman* line of cases denies recovery in tort to "a party whose complaint is rooted in disappointed contractual or commercial expectations." *Id.* 180 Ill.Dec. at 675, 607 N.E.2d at 1188. This court has been unable to find a single case which extends the tort of negligent misrepresentation to the letter of credit situation. At least one court has declined to extend the tort of negligent misrepresentation to a dispute between the bank that issued a letter of credit and the bank that confirmed the same letter of credit. *Instituto Nacional De Comercializacion Agricola v. Continental Illinois National Bank and Trust Company, et al.,* 858 F.2d 1264, 1268–1269 (7th Cir.1988).

The current dispute arises from disappointed commercial expectations. Such disputes are best resolved under Article 5 of the Uniform Commercial Code and contract law rather than tort law. Thus, the negligent misrepresentation claim is dismissed.

### VI. Count IV—Breach of Sales Agreement

■ Navistar moves to dismiss the breach of sales agreement claim, arguing that the underlying contract did not contain a requirement that Navistar provide 1993 model year buses. The Bank, as assignee of Sidauto's rights, attempts to assert Sidauto's rights under the sales agreement, alleging that the Navistar and Sidauto "had a valid and enforceable agreement for the purchase of 1993 buses that could be imported into Colombia."[1] The sales agreement, which consists of a letter ratifying the agreement, is not attached to the Complaint but is provided by Navistar in its motion to dismiss without objection by the Bank.[2]

The Bank argues that the parties clearly intended the sale and purchase of 1993 model year buses and that the letters of credit, which specify that the buses are 1993 model year, are an integral part of the sales agreement. Yet, the written contract does not mention any agreement as to the model year of the buses. Although the letters of credit, which *do* mention the model year of the buses, are mentioned in the sales agreement, the sales agreement does not provide the terms for the letters of credit other than the amount. Although the Bank argues that the letters of credit were part of the sales agreement, the Complaint does not make such an allegation. Thus, this court dismisses the breach of sales agreement claim and grants the Bank leave to file an amended claim.

### VII. Count V—Breach of Implied Warranty of Fitness for a Particular Purpose

■ Navistar argues that the Bank cannot state a claim for breach of implied warranty of fitness for a particular purpose because the Bank was not the "buyer" of the buses and because the Bank did not rely on Navistar to select or furnish suitable goods. Because this court agrees with the second argument, it does not address the first argument.

Uniform Commercial Code Section 2–315 defines the implied warranty of fitness for a particular purpose as follows:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

810 ILCS 5/2–315 (1996).

In this case, the Bank has failed to allege that it relied on Navistar to furnish suitable goods. Indeed, the Bank cannot allege that it relied on Navistar to furnish any goods. Even as assignee of Sidauto's claims, the Bank failed to make such an allegation. The Bank alleged only that Navistar knew that Sidauto was purchasing the buses for import and use in Colombia. Section 2–315 clearly requires that the Bank also allege reliance on

---

1. This court notes that the Bank was not a party to the sales agreement and, thus, cannot sue for breach in its own right.

2. Because the Bank does not object to Navistar's presentation of this letter as the "contract," this court assumes that the letter constitutes to contract between the parties.

Navistar's skill and judgment to provide buses which were appropriate for import. *See Woodill v. Parke Davis & Co.*, 58 Ill.App.3d 349, 356, 15 Ill.Dec. 900, 904, 374 N.E.2d 683, 688 (1978), *aff'd,* 79 Ill.2d 26, 37 Ill.Dec. 304, 402 N.E.2d 194 (1980). Thus, Count V is dismissed and the Bank is granted leave to amend the Complaint as appropriate.

### VII. Count VI—Breach of Implied Covenant of Good Faith

■■■ Defendants next challenge the plaintiff's claim for breach of the implied covenant of good faith. Defendants argue that "good faith" is simply a rule of contractual interpretation and cannot be alleged as a separate cause of action from the breach of contract claim. We agree.

■■■ "(T)he obligation to deal in good faith is implied by Illinois law into every contract and breach of that duty is simply a breach of the underlying contract." *Industrial Specialty Chemicals, Inc. v. Cummins Engine Co., Inc.*, 902 F.Supp. 805, 811 (N.D.Ill.1995); *see LaScola v. U.S. Sprint Comm.*, 946 F.2d 559, 565 (7th Cir.1991). Any claim for breach of the implied covenant of good faith must be included within a breach of contract claim. *Id.* Thus, Count VI is dismissed and the Bank is granted leave to file an amended claim as part of a breach of contract claim.

### VIII. Count VII—Illinois Consumer Fraud Act

■■■ Finally, Navistar moves to dismiss Count VII, brought under the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1–505/12, because (1) the alleged conduct did not impact Illinois consumers, and (2) the alleged conduct did not involve trade practices addressed to the market generally and did not otherwise implicate consumer protection concerns. Because we agree with the second argument, we do not reach the first argument.

■■■ Section 2 of the Consumer Fraud Act provides, in relevant part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use of any deception,

fraud, false pretense, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2. Although the Consumer Fraud Act is primarily concerned with protecting consumers, plaintiffs under the Act need not be individual consumers. Businesses also have standing to sue under the Act. *Industrial Specialty Chemicals, Inc. v. Cummins Engine Co., Inc.*, 902 F.Supp. 805, 811–812 (N.D.Ill.1995).

■■■ The test for standing to sue as a business is whether "the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." *Id.* at 812, *quoting Gadson v. Newman*, 807 F.Supp. 1412, 1421 (C.D.Ill.1992); *Athey Products Corp. v. Harris Bank Roselle*, 89 F.3d 430 (7th Cir.1996). The Bank does not argue that the alleged conduct involved trade practices addressed to the market generally or otherwise implicate consumer concerns. Rather, the Bank argues that any injured party should be allowed to sue under the Consumer Fraud Act. The law simply does not provide such standing for businesses and, thus, the Bank has no standing to sue under the Consumer Fraud Act. Count VII is dismissed.

### IX. Conclusion

For the reasons stated above, this court grants Navistar's motion to dismiss counts I (breach of presentment warranty), II (fraud), III (negligent misrepresentation), IV (breach of sales agreement), V (breach of implied warranty of fitness for a particular purpose), VI (breach of implied covenant of good faith), and VII (consumer fraud act). The Bank is

granted leave to file amended claims with respect to counts II, IV, and VI.