Merritt v. Hopkins, et al.

(text box: 1) NO. 5-04-0122

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

DAVID WAYNE MERRITT, SR., Special )  Appeal from the

Administrator of the Estate of David )  Circuit Court of

Wayne Merritt, Jr., DAVID WAYNE )  Madison County.

MERRITT, SR., and TIFFANY MERRITT, )

)

     Plaintiffs-Appellees, )  

)

v. )  No. 01-L-1093

)   

HOPKINS GOLDENBERG, P.C., JOHN ) 

HOPKINS, and MARK GOLDENBERG, )  Honorable

)  Phillip J. Kardis,

     Defendants-Appellants. )  Judge, presiding.

________________________________________________________________________

JUSTICE HOPKINS delivered the opinion of the court:

The plaintiffs, David Wayne Merritt, Sr., individually and in his capacity as the special administrator of the estate of David Wayne Merritt, Jr., and Tiffany Merritt, filed this action against the defendants, Hopkins Goldenberg, P.C., John Hopkins, and Mark Goldenberg, alleging that the defendants committed legal malpractice in obtaining an inadequate settlement in an underlying wrongful-death-and-survival action involving David Jr., who had died in an automobile accident.  

On appeal, the defendants argue that the plaintiffs failed to prove their legal malpractice claim and that, therefore, the circuit court improperly denied the defendants' motions for a directed verdict and for a judgment notwithstanding the verdict.  Alternatively, the defendants contend that the verdict was against the manifest weight of the evidence and that various errors in the admission of evidence, an erroneous denial of their motion to transfer, jury instruction errors, an improper closing argument, and an improper damages award entitle them to a new trial.

We reverse and remand for a new trial.

FACTS

On May 16, 1998, David Sr. entered into a contingent fee agreement with the defendants to institute a negligence action against Missouri Dry Dock and Repair Company (Missouri Dry Dock) for the wrongful death of his six-year-old son, David Jr., who died on May 14, 1998, as a result of an automobile accident in Alexander County.  David Jr.'s mother, JoAnn, and sister, Tiffany, were also involved in the collision.  Although JoAnn originally retained the defendants to represent her regarding her personal injury claims, she terminated the attorney-client relationship due to disagreements with David Sr.  On May 27, 1998, David Sr. was appointed by the circuit court of Alexander County as a special administrator to prosecute the wrongful-death-and-survival action.  The defendants represented David Sr. in this capacity, and on November 18, 1999, the plaintiffs settled the action for $200,000.      

On July 3, 2001, the plaintiffs brought this legal malpractice action against the defendants, alleging that the defendants settled the plaintiffs' claim for an inadequate amount.  The plaintiffs alleged that the defendants committed malpractice by failing to adequately investigate the claim, by improperly advising David Sr. that $200,000 was a fair and adequate settlement, and by failing to adequately prepare the necessary medical data and testimony to make a proper disposition of the claim.  On October 31, 2003, the defendants filed a motion to transfer venue from Madison County to Alexander County, and the circuit court denied the defendants' motion on November 3, 2003.

At the trial on November 4, 5, and 6, 2003, defendant John Hopkins, a partner of the defendant law firm, testified that John Simmons, who was at that time an employee of the defendant law firm, had initiated the plaintiffs' underlying action.  Hopkins testified that he took charge of the plaintiffs' case in November 1998.  Hopkins testified that the defendants investigated the accident, prepared and filed the 21-page complaint, conducted written and oral discovery, issued trial subpoenas, and prepared jury instructions for trial.  Hopkins acknowledged that he did not take statements in the underlying case and that the legal research he completed was stored in his memory, not the file.        

Hopkins acknowledged that he wrote an initial settlement demand letter, dated November 24, 1998, to Al Pranaitis, the attorney hired by the insurance company to defend Missouri Dry Dock and its driver, Gerald Robinson, in the underlying action.  In the letter, Hopkins stated that the underlying case was worth in excess of $2 million if it were pursued in Madison or St. Clair County but that because the case was filed in Alexander County and the policy limit of Missouri Dry Dock's insurance was $1 million, his tendered settlement demand was $750,000.  Hopkins testified that initial settlement demands were generally twice as much as the case was worth and were inflated to send a signal to opposing counsel.

On December 15, 1998, Hopkins wrote another letter to Pranaitis, encouraging a settlement by the end of the year.  Hopkins testified that although he had spoken with David Sr. on the telephone at that time and David Sr. had indicated that he wanted to settle the case, the two men had not met in person.  Hopkins testified that, throughout the case, he primarily communicated with David Sr. by telephone.

On February 25, 1999, Hopkins wrote another letter to Pranaitis, stating that David Sr. was interested in a quick conclusion and suggesting that the parties settle the case. Hopkins testified that at that time, the depositions of Gerald Robinson and David Sr. had been taken.  Hopkins met David Sr. in person at his deposition.  

On March 22, 1999, Pranaitis offered to settle the underlying case for $60,000.  On March 26, 1999, Hopkins refused Pranaitis's offer of $60,000, characterized the offer as an insult, and stated that the previous demand of $750,000 was more than reasonable, but he lowered the settlement demand to $400,000.

On March 31, 1999, Pranaitis offered to settle the underlying case for $90,000.  On April 5, 1999, Hopkins rejected the $90,000 offer and stated that the only resolution would be to try the cause in Alexander County that next October.

On June 17, 1999, Pranaitis offered to settle the underlying case for $100,000.  On June 21, 1999, Hopkins rejected Pranaitis's $100,000 offer, stating that he would entertain settlement discussions more in line with $400,000.  On October 11, 1999, Hopkins offered to settle the underlying case for $300,000, stating that the offer was based on his client's insistence to settle.  

Hopkins testified that on November 5, 1999, within two weeks of the trial date, Pranaitis notified him that Missouri Dry Dock was admitting liability.  Hopkins testified that the admission of liability was a tactical decision on Missouri Dry Dock's behalf to remove the circumstances of the accident from the case and to narrow the issues to damages only, thereby lowering damages.  Hopkins testified that he advised David Sr. that if he lost, the underlying case might be reduced significantly to $100,000 but that if he won, the case might still have a value of $300,000.  Hopkins testified that David Sr. told him that he wanted the case completed because he was in pain and was having trouble dealing with JoAnn.  The parties agreed to settle the underlying case for $200,000.  On November 18, 1999, the circuit court of Alexander County entered its order approving the $200,000 settlement.  

Hopkins testified that when settling the underlying case, he considered issues regarding a release JoAnn had signed.  Hopkins characterized the release as a cloud on the case because it was unclear whether JoAnn had released her wrongful death claim along with her bodily injury claim.  Hopkins testified that the release's language was broad, that the release would be construed against JoAnn because her attorney had drafted it, and that JoAnn's settlement of $100,000 for bodily injuries only was high considering that her medical expenses and lost wages were only $7,500.  Hopkins testified that if the trial court ruled on the release matter and then the matter was appealed, the case would be prolonged, and David Sr. continued to assert that he wanted the case resolved.  Hopkins testified that in determining the value of the underlying case, he also considered problems occurring between David Sr. and JoAnn.

Hopkins testified that he filed the case in Alexander County because it was the site of the accident.  Hopkins acknowledged that he could have filed the case in the federal court in Benton, Illinois, but he testified that both Alexander County and the federal court in Benton were considered conservative jurisdictions.  Hopkins testified that in his practice, he was familiar with general areas in Southern Illinois, including those south of Madison and St. Clair Counties.  Hopkins testified that as the venues moved away from Madison and St. Clair Counties, the jurors were more conservative and the verdicts and settlements were lower.  Hopkins testified that very few cases were filed in Alexander County, as evidenced by the underlying case's number, which was 12, meaning that during the first five months of 1998, before the underlying case was filed, only 11 other cases of this type were filed in Alexander County.

John Simmons testified that within a couple of days after the accident, he met with David Sr. and JoAnn and visited the accident scene.  Simmons testified that he had no experience with trying or settling cases in Alexander County.  In June 2001, Simmons, who at that time was no longer an employee of the defendant law firm, called David Sr., learned of the settlement amount, and introduced David Sr. to the attorney who prosecuted this legal malpractice case.

Roy Dripps, an attorney and a resident of Madison County, testified that he primarily represents plaintiffs in personal injury and wrongful death cases.  Dripps testified that after reviewing the underlying case against Missouri Dry Dock, he opined that Hopkins' legal representation had been substandard and that Hopkins had failed to employ reasonable skill in negotiating the settlement.  Dripps testified that Hopkins had not acted as a reasonably competent attorney because he failed to obtain discovery regarding Missouri Dry Dock's assets and therefore failed to pressure the insurance company to prevent an excess judgment against Missouri Dry Dock.  Dripps testified that Hopkins should have argued to opposing counsel that JoAnn's release, which Hopkins had considered in advising David Sr. to accept the $200,000 settlement, only released her bodily injury claims, not her wrongful death claim.  Dripps testified that Hopkins should have told David Sr. that Missouri Dry Dock had conceded liability, that there would be no defense verdict, and that only the amount of damages was at issue. 

Dripps testified that the case was worth between one and two million dollars and that the $200,000 settlement offer was inadequate.  Dripps acknowledged, however, that he had tried only one wrongful death case to a verdict and that the case did not involve the wrongful death of a minor.  Dripps also acknowledged that the location of the case is a factor to consider in determining a settlement or verdict value, that he had dealt with only one personal injury case in Alexander County, that he had not tried a case in Alexander County, that he had never picked a jury there, and that he had completed no research regarding settlements in Alexander County.   

Dripps testified that Hopkins could have filed in alternative venues, including the federal court in East St. Louis or Benton, state court in Cape Girardeau, Missouri, or federal court in Cape Girardeau, Missouri, because Missouri Dry Dock and its driver were located in Missouri.  Dripps testified that an important consideration in choosing a forum is the length of time before the case gets to trial.  Dripps acknowledged that any greater recovery in a different forum would have been reduced by the two-year delay in getting to trial.

David Sr. testified regarding his loss of society because of his son's death.  David Sr. testified that he met with Hopkins, for the third time, in the Alexander County courthouse, where he first learned the settlement amount.  David Sr. testified that, while at the courthouse, Hopkins told him that if they pursued the case to trial, there was a good chance that he would recover nothing.  David Sr. testified that he was generally intimidated by Hopkins.  However, he acknowledged that he had agreed to settle and that he had told Hopkins that he wanted the case resolved.  David Sr. testified that he did not tell Hopkins that he did not want to go to trial.

The parties stipulated that Missouri Dry Dock was a solvent corporation and that the parties to the release intended to release the claims for JoAnn's and Tiffany's bodily injuries.

Pranaitis, defense counsel in the underlying wrongful death case, testified for the defense.  Pranaitis testified that before the underlying case, he had not worked on cases in Alexander County but had worked on cases in counties near Alexander County, 
e.g.
, Williamson and Franklin Counties.  Pranaitis testified that, prior to Hopkins' first settlement demand, he had determined that there was 100% liability on the part of Missouri Dry Dock and Gerald Robinson, that, if the case proceeded to a jury trial, the jury would probably award damages in the amount of $100,000 to $200,000, and that the settlement value of the underlying case ranged from $125,000 to $150,000.  Pranaitis based these amounts on the venue of the case, 
i.e.
, Alexander County was a rural and poor county with little litigation.  Pranaitis also based his determination on the damages that could be recovered in a case involving the wrongful death of a child, 
i.e.
, the loss of income is not considered, and child-rearing expenses are deducted from the jury's award.

Pranaitis testified that the negotiations in the underlying case were typical of the thousands of cases he had handled in his 27 years of experience and that, of those thousands of cases, he could not recall one where the amount recovered exceeded his initial evaluation.  Pranaitis testified that it was his opinion that $200,000 was more than he thought the insurance should pay as a settlement.  Pranaitis acknowledged that, since the settlement, he had represented Hopkins as a client.

Mark Johnson, a trial attorney who had practiced law in Alexander County since 1982, testified that his office handled approximately two or three wrongful death actions at any given time and that he had represented families in the wrongful death of a minor on four occasions.  Johnson testified that he had reviewed the pleadings, discovery, and other documentation involving the underlying case and that, in his opinion, Hopkins had not deviated from the standard of care.  

Johnson testified that the $200,000 settlement amount was fair and reasonable, considering that it was a wrongful death claim for a minor and that it was filed in Alexander County.  Johnson testified that there were approximately one or two civil trials in Alexander County per year, that the southern area of Illinois was economically depressed, that Alexander County was either the poorest or the second poorest county in Illinois, and that unemployment was in double digits most of the time.  Johnson testified that both Pranaitis and Hopkins contacted him within one year after David Jr. had died to inquire about jury verdicts in Alexander County.  Johnson testified that the largest verdict recovered in Alexander County's history was $300,000.  In that case, the plaintiff had a severe back injury, lost wages, and expensive medical bills.

In the legal malpractice case, the jury returned a verdict in favor of the plaintiffs and assessed damages in the amount of $675,000.  The jury specifically found that $200,000 was not a fair and reasonable settlement for the plaintiffs' claims against Gerald Robinson and Missouri Dry Dock under the circumstances in 1999.  On November 13, 2003, the circuit court entered a judgment on the jury's verdict.  On January 22, 2004, the circuit court denied the defendants' timely posttrial motion, which had argued, 
inter alia
, that the jury's verdict was against the manifest weight of the evidence.  On February 10, 2004, the defendants filed a timely notice of appeal.

ANALYSIS

The defendants argue that the circuit court erred in denying the defendants' motion for a judgment notwithstanding the verdict because the plaintiffs failed to establish the elements of their legal malpractice claim.  Alternatively, the defendants argue that the verdict was against the manifest weight of the evidence.  

The trial court should enter a judgment notwithstanding the verdict when all of the evidence, viewed in the light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand.  
Pedrick v. Peoria & Eastern R.R. Co.
, 37 Ill. 2d 494, 510 (1967).  We review 
de novo
 the denial of a motion for a judgment notwithstanding the verdict.  
McClure v. Owens Corning Fiberglas Corp.
, 188 Ill. 2d 102, 132 (1999).  

"On a motion for a new trial a court will weigh the evidence and set aside the verdict and order a new trial if the verdict is contrary to the manifest weight of the evidence."  
Mizowek v. De Franco
, 64 Ill. 2d 303, 310 (1976).  To direct a verdict, the court considers a much more conclusive evidentiary situation than is necessary to justify a new trial.  
Pedrick
, 37 Ill. 2d at 509-10.  "The determination of whether a new trial should be granted rests within the sound discretion of the trial court, whose ruling will not be reversed unless it reflects an abuse of that discretion."  
Snelson v. Kamm
, 204 Ill. 2d 1, 36 (2003).

A plaintiff who settles an underlying claim is not automatically barred from bringing a malpractice action against the attorney who represented him in that claim.  
McCarthy v. Pedersen & Houpt
, 250 Ill. App. 3d 166, 172 (1993).  "The principle that a lawyer may be held liable for negligence in the handling of a case that was ultimately settled by the client, whether based on deficiencies in preparation that prejudiced the case and more or less required a settlement or on a negligent evaluation of the client's case, has been accepted by nearly every court that has faced the issue."  
Thomas v. Bethea
, 351 Md. 513, 527, 718 A.2d 1187, 1194 (1998) (citing, 
inter alia
, 
McCarthy
, 250 Ill. App. 3d 166).  The attorney malpractice action should be allowed where the plaintiff can show that he settled for a lesser amount than he could reasonably expect without the malpractice.  
Brooks v. Brennan
, 255 Ill. App. 3d 260, 270 (1994).  

"To establish legal malpractice, a plaintiff must prove the existence of an attorney-client relationship; a duty arising from that relationship; a breach of that duty; a proximate causal relationship between the breach of duty and the damages sustained; and actual damages."  
Glass v. Pitler
, 276 Ill. App. 3d 344, 349 (1995).  The malpractice plaintiff must prove a case within a case, that is, the plaintiff is required to prove the underlying action and what his recovery would have been in that prior action absent the alleged malpractice.  
Fox v. Berks
, 334 Ill. App. 3d 815, 817 (2002); 
Glass
, 276 Ill. App. 3d at 351.  The plaintiff must establish that "but for" the attorney's negligence, the client would not have suffered the damages alleged.  
Glass
, 276 Ill. App. 3d at 349.  "The injuries resulting from legal malpractice are not personal injuries but pecuniary injuries to intangible property interests."  
Glass
, 276 Ill. App. 3d at 349.  "Damages must be incurred and are not presumed [citation]; and the plaintiff must affirmatively plead and prove that he suffered injuries as a result of the attorney's malpractice."  
Glass
, 276 Ill. App. 3d at 349. 

Alexander County was a proper forum for the underlying wrongful-death-and-survival action.  David Sr. and his family were residents of Alexander County, and the accident occurred in Alexander County.  See 735 ILCS 5/2-101 (West 2004);
 Dawdy v. Union Pacific R.R. Co.
, 207 Ill. 2d 167, 173 (2003) (when the plaintiff chooses his home forum or the site of the accident or injury, it is reasonable to assume that the forum is proper because the litigation has the aspect of being decided at home); see also 
Botello v. Illinois Central R.R. Co.
, 348 Ill. App. 3d 445, 459 (2004) (the county's interest in ensuring safety at local railroad tracks strongly militated in favor of deciding the action in that county).  A plaintiff's use of forum-shopping to suit his individual interests is a strategy contrary to the purposes behind the venue rules and is against Illinois's public policy.  See 
Dawdy
, 207 Ill. 2d at 175 (decent judicial administration could not tolerate forum-shopping as a legitimate reason for burdening communities with litigation that arose elsewhere).

The plaintiffs presented evidence that Hopkins failed to notify David Sr. that Missouri Dry Dock had admitted liability and instead advised David Sr. otherwise.  Therefore, the plaintiffs presented sufficient evidence that Hopkins breached the standard of care he owed to his client.  However, considering the particular circumstances in the present case, the plaintiffs failed to present sufficient evidence that but for Hopkins' breach of the standard of care, the plaintiffs would have received an amount in excess of $200,000 for their wrongful-death-of-a-minor claim, properly filed in Alexander County.  See 
Northern Illinois Emergency Physicians v. Landau, Omahana & Kopka, Ltd.
, Nos. 97895, 97899 (September 22, 2005) (even if an attorney's negligence is established, no action will lie against the attorney unless the negligence proximately caused damage to the client); 
Fox
, 334 Ill. App. 3d at 818 (the plaintiff could not prove that she was damaged because she could not prove that she would have been able to enforce a larger judgment); 
Brooks
, 255 Ill. App. 3d at 271 (the plaintiff failed to present evidence that she settled for a lesser amount of damages than she could have reasonably expected to have recovered without the attorney's alleged malpractice).  The plaintiffs' expert provided no basis to support his testimony that the value of the underlying wrongful-death-of-a-minor case, properly filed in Alexander County, was greater than $200,000.  Dripps testified that the case was worth between one and two million dollars; however, he acknowledged that he had tried only one wrongful death case to a verdict and that he had never gone to a verdict in a wrongful death case where the decedent was a minor.  Although Dripps acknowledged that the location of the suit was a factor to consider when determining the value of a case, he admitted that he had never picked a jury in Alexander County and had conducted no research regarding settlements in Alexander County.  Dripps's testimony failed to establish that the plaintiffs could have recovered more than $200,000 for their Alexander County wrongful-death-of-a-minor case and therefore failed to sufficiently establish proximate cause to sustain the jury's verdict.

The plaintiffs cite 
Mayol v. Summers, Watson & Kimpel
, 223 Ill. App. 3d 794, 807  (1992), for the proposition that an attorney's admission concerning the value of a case is sufficient to sustain the jury's award of damages, and accordingly, they cite to Hopkins' initial negotiation letter to Pranaitis, stating that the settlement value of the underlying case was $750,000.  We find 
Mayol
 distinguishable from the present case because the attorney in 
Mayol
 estimated the value of the case 
to his client
.  
Mayol
, 223 Ill. App. 3d at 807.  Here, during negotiations Hopkins estimated the settlement value of the case to 
opposing counsel
.  See 
Bowman v. Illinois Central R.R. Co.
, 11 Ill. 2d 186, 213 (1957) (matters relating to offers of compromise are ordinarily inadmissible).  Hopkins testified, and common sense dictates, that Hopkins' initial settlement demand of $750,000 was inflated for negotiation purposes.  The evidence regarding Hopkins' initial settlement proposal was not sufficient to support the jury's verdict and failed to sufficiently establish causation, 
i.e.
, that but for Hopkins' negligence, the plaintiffs could have recovered more than $200,000 in the Alexander County wrongful-death-of-a-minor suit.  

Pranaitis testified that he initially estimated the settlement range to be $125,000 to $150,000, considering that the case was filed in Alexander County, the case involved no lost wages, and child-rearing expenses would be deducted from the loss-of-society award.  Pranaitis testified that his initial settlement estimates were rarely wrong and that $200,000 was more than he thought the insurance company should have paid as a settlement. Johnson testified that his office handled approximately two to three wrongful death actions at a time and that he had previously represented families in the wrongful death of a minor.  Johnson testified that he had practiced law in Alexander County since 1982, that Alexander County was one of the most impoverished counties in Illinois, that the largest verdict recovered in Alexander County was $300,000, and that in that case, the plaintiff had a severe back injury, lost wages, and expensive medical bills.  Johnson testified that the $200,000 settlement amount in the underlying action was fair and reasonable, considering the damages available in the underlying case and considering that the case was in Alexander County.   

The plaintiffs failed to provide sufficient evidence to show that but for the attorney's negligence, they could have recovered more than $200,000, considering the available damages in the underlying case and considering that the proper forum of the underlying case was Alexander County and that Alexander County was a conservative jurisdiction with regard to damage awards.  See 
Thomas
, 351 Md. at 532, 718 A.2d at 1197 ("A lawyer cannot be held liable for not having held out for a settlement that could not have been achieved in any event").  We therefore find that the jury's verdict was contrary to the manifest weight of the evidence and that the circuit court should have granted a new trial.  See 
Mizowek
, 64 Ill. 2d at 311.

We also find that the appropriate forum for this legal malpractice case was Alexander County.  The plaintiffs were residents of Alexander County, the underlying vehicle accident occurred in Alexander County, the settlement was approved by the circuit court of Alexander County, and the defendants' expert, Johnson, practiced law from his office in Alexander County.  See 735 ILCS 5/2-101 (West 2004); 
Dawdy
, 207 Ill. 2d at 172 (in determining the most appropriate forum, a court considers private-interest factors: the convenience of parties, the ease of access to evidence, the availability of compulsory process, the cost to obtain the attendance of willing witnesses, and the possibility of viewing the premises).  In addition, the evidence demonstrated that Alexander County's docket was not congested, and Alexander County has a strong interest in determining the value of a wrongful-death-of-a-minor suit originating in its forum.  See 
Dawdy
, 207 Ill. 2d at 173 (in determining the most appropriate forum, a court considers public-interest factors: administrative difficulties caused when litigation is handled in congested venues, the unfairness of imposing jury duty on residents of a county with no connection to the litigation, and the interest in having local controversies decided locally).  The circuit court abused its discretion by denying the defendants' motion to transfer the case to Alexander County.  Accordingly, we reverse the circuit court's judgment on the jury's verdict and remand the cause to the circuit court with directions to transfer the case to Alexander County for a new trial, pursuant to the doctrine of 
forum non conveniens
.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Madison County is reversed, and the cause is remanded with directions to transfer it to Alexander County for a new trial.  

Reversed; cause remanded with directions.

McGLYNN and COOK, JJ., concur.

                                      NO. 5-04-0122

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________________

DAVID WAYNE MERRITT, SR., Special )  Appeal from the

Administrator of the Estate of David )  Circuit Court of

Wayne Merritt, Jr., DAVID WAYNE )  Madison County.

MERRITT, SR., and TIFFANY MERRITT, )

)

     Plaintiffs-Appellees, )  

)

v. )  No. 01-L-1093

)   

HOPKINS GOLDENBERG, P.C., JOHN ) 

HOPKINS, and MARK GOLDENBERG, )  Honorable

)  Phillip J. Kardis,

     Defendants-Appellants. )  Judge, presiding.

___________________________________________________________________________________

Opinion Filed
: November 4, 2005

___________________________________________________________________________________

Justices
: Honorable Terrence J. Hopkins, J.

Honorable Stephen P. McGlynn, J., and

Honorable Robert W. Cook, J.,

Concur

___________________________________________________________________________________

Attorneys
 Daniel F. Konicek, Jeffrey T. Mitchell, Konicek & Dillon, P.C., 21 W. State Street,

for
 Geneva, IL 60134

Appellants
 

___________________________________________________________________________________

Attorneys
 Morris B. Chapman, Barberis, Bradford & Chapman, 201 E. Vandalia Street, Suite

for
 B, Edwardsville, IL 62025

Appellees
 

___________________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 11/4//05.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.